```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   FORT SMITH DIVISION
```

**THORNTON DRILLING COMPANY**                                    PLAINTIFF

              v.            Civil No. 06-2173

**STEPHENS PRODUCTION COMPANY and**
**NATIONAL UNION FIRE INSURANCE COMPANY**
**OF PITTSBURGH, PA.**                                          DEFENDANTS

<u>AMENDED AND SUBSTITUTED MEMORANDUM OPINION</u>

On the 16th day of July, 2007, the Court heard oral argument in connection with the **Motion For Summary Judgment Of Defendant, National Union Fire Insurance Company Of Pittsburgh, Pa.** (document #44) and **Plaintiff's Cross-Motion For Summary Judgment** (document #45), and from said argument, the motions themselves, the supporting documentation, and the responses thereto, the Court finds and orders as follows:

1.    Plaintiff Thornton Drilling Company ("Thornton") seeks a declaratory judgment, pursuant to **28 U.S.C. §2201,** that it has no duty to defend or indemnify defendant Stephens Production Company ("Stephens") with regard to a wrongful death claim involving a Thornton employee, Eric Stricklin ("Stricklin"). Alternatively, if Thornton has such a duty, it seeks a declaratory judgment that defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), has a duty to indemnify Stephens, under a contract of insurance National Union issued to Thornton, for sums in excess of $1,000,000.

Stephens counterclaims against Thornton, alleging that

Thornton was negligent or in breach of contract by not having Stephens added as an additional insured on the National Union policy.

2.   National Union now moves for summary judgment, contending that it is entitled to judgment as a matter of law based on contracts between the various parties.  Thornton, for its part, contends it is entitled to summary judgment that National Union, as a matter of law, must provide insurance coverage for any losses it incurs as a result of the Stricklin lawsuit in excess of those covered by its general liability insurance.

3.   Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**.  Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.  **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**.  The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute;  however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute.  **City of Mt. Pleasant, Iowa v.**

**Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).**

    4.    Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute.[1] From those statements, the following significant undisputed facts are made to appear:

- At the time of the events in suit, Thornton was drilling a well -- referred to as Dunbar #5 -- for Stephens in Franklin County, Arkansas, using a drilling rig leased from Stephens.

- The various aspects of the relationship between Thornton and Stephens, as pertinent to this case, are established by three contracts: the Contractor's Master Agreement executed on June 30, 2000 ("Master Agreement"), the Lease Agreement With Option To Sell dated May 27, 2004 ("Lease Agreement"), and the Drilling Bid Proposal And Daywork Drilling Contract executed on February 20, 2005 ("Drilling Contract"). These documents were all submitted as exhibits in connection with National Union's motion, and there is no dispute as to their contents, which will be referred to as necessary in this Order.

- Thornton was insured under Commercial Umbrella Liability

---

[1] National Union denied many of the factual assertions of Thornton as "immaterial." The Court has disregarded these denials, as they are not made on the basis that the asserted fact is not a true fact, and -- where relevant -- has treated those factual assertions as undenied.

>   Policy BE2963803 issued by National Union (the "National Union Policy"), for the policy period December 15, 2004, to June 15, 2005.  This document was likewise submitted as an exhibit in connection with National Union's motion, and there is no dispute as to its contents, which will be referred to as necessary in this Order.

* Stephens was not listed as an additional insured on the National Union Policy.
* On January 22, 2005, Stricklin, an employee of Thornton, was killed by an explosion or well blowout at Dunbar #5.
* A wrongful death suit alleging various tort causes of action (the "Stricklin Suit") was filed on behalf of Stricklin's beneficiaries against Thornton, Stephens, and others.
* Thornton was dismissed from the Stricklin Suit based on the exclusivity defense of the workers' compensation laws.
* Stephens eventually settled the Stricklin Suit, and demanded indemnification from Thornton and National Union for part of the monies paid.
* Both Thornton and National Union denied any liability to Stephens for the Stricklin Suit settlement.

5.  National Union offers two arguments supporting its position that it is entitled to summary judgment:

>   (a) Stephens was not an additional insured under the National Union Policy; and
>
>   (b) based on the Master Agreement, Thornton has no obligation to defend or indemnify Stephens for the Stricklin Suit.

National Union also contends that Stephens has no standing to oppose its Motion For Summary Judgment, since Stephens has not made a claim against it in this suit.

Thornton joins National Union's argument that Thornton has no obligation *vis a vis* Stephens, but contends in the alternative that if Thornton *does* have any obligation *vis a vis* Stephens, such obligation is insured under the National Union Policy. Thornton also contends that Stephens' counterclaim against it for negligence in failing to add Stephens as an additional insured on the National Union Policy should be dismissed.

Stephens takes the position that the Lease Agreement and the Drilling Contract modified the Master Agreement in such a way as to impose liability for indemnification in the Stricklin Suit on Thornton.

6. The issues presented rely, for their disposition, on basic principles of contract and insurance law governed by the law of either Arkansas or Oklahoma. The Master Agreement is governed by the laws of the state where "services are performed"; Dunbar #5 is located in Arkansas and, thus, Arkansas law governs the

Master Agreement.  The Lease Agreement, by its terms, is governed by Arkansas law.  The Drilling Contract is governed by Oklahoma law.  The National Union Policy does not specify governing law.

Regardless of these differences, the parties have briefed all the issues as though Arkansas law applies, and there is actually little difference between the law of Arkansas and that of Oklahoma on the issues presented.

Under both Arkansas and Oklahoma law, the construction and legal effect of written contracts are matters to be determined by the Court, except where ambiguity is found.

"When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed."  **Artman v. Hoy**, --- Ark. ---, --- S.W.3d ---, 2007 WL 1560439 (Ark. 2007).

"If a contract is complete in itself and viewed in its entirety is unambiguous, its language is the only legitimate evidence of what the parties intended.  The Court will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision."  **Whitehorse v. Johnson**, 156 P.3d 41 (Okla. 2007).

The rule is much the same when the contract in question is an insurance policy.  Under Arkansas law,

> [i]f the language of the policy is unambiguous, we will give effect to the plain language of the policy without

-6-

> resorting to the rules of construction. On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court.
>
>        *  *  *
>
> We have recently observed that contracts of insurance should receive a practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties in light of their general object and purpose.

**Multi-Craft Contractors, Inc. v. Perico Ltd.**, **96 Ark.App. 133, --- S.W.3d ---, 2006 WL 2623356 (2006)**(internal citations omitted).

Under Oklahoma law,

> [t]he rules of construction and analysis applicable to contracts govern equally insurance policies. The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made. In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning. Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties.

**May v. Mid-Century Insurance Company**, **151 P.3d 132 (Okla. 2006).**

  7. The Master Agreement recites that Thornton "may perform work" for Stephens "from time to time, when and as requested" by Stephens. It provides that "[s]pecific jobs to be performed will be requested and confirmed by written contract," and that "a]ny and all work agreed on shall be performed in accordance with and

subject to the terms and provisions" of the Master Agreement.

The Master Agreement contains both a general provision addressing who will bear liability for death claims involving Thornton's employees (¶4(a)) and a specific provision relating to liability for death claims arising out of specific causes, including explosions and well blowouts (¶4(d)). Because specific provisions control over general ones, **Millwood-RAB Marketing, Inc. v. Blackburn**, 95 Ark.App. 253, --- S.W.3d ---, 2006 WL 1413489 (2006), and the cause of Stricklin's death was either an explosion or a well blowout, the Court need not consider ¶4(a).

Paragraph 4(d) provides that:

[n]otwithstanding any other provision in this Agreement to the contrary, other than Clause 3(b)[2], [Stephens] agrees that [Thornton] shall not be liable for, and [Stephens] shall release, defend, indemnify and hold harmless [Thornton] . . . from and against any claims, liability, expenses, attorneys [sic] fees and costs of defense to the extent permitted by law, for . . . (3) personal injury, death or property damage or any damages whatsoever growing out of or in any way connected with or resulting from . . . explosion . . . and/or a well blowout. . . . The defense, indemnity, release and hold harmless obligations of [Stephens] provided for above apply to claims or liability even if contributed to or caused by the sole, joint, comparative, contributory or concurrent negligence, fault, strict liability or product liability of [Thornton][3] . . . .

If this clause controls the outcome of the case at bar, then clearly Thornton has no obligation to defend or indemnify Stephens

---

[2]There is no "Clause 3(b)" in the Master Agreement.

[3]This provision, by its terms, does not apply if the claim or liability is caused by Thornton's gross negligence or willful misconduct, but there is no allegation of such in this case.

-8-

for the Stricklin Suit, and the matter is at an end. However, there is another provision of the Master Agreement that must be considered.

8. Paragraph 15 of the Master Agreement provides as follows:

> In the event there should be any conflict between the provisions of this Agreement and any [Stephens] work order, whether written or oral, or [Thornton] work ticket, invoice, statement, purchase order, or any other type of written memoranda, pertaining to the subject matter hereof, the provisions of this Agreement shall control unless expressly agreed otherwise in writing by the parties hereto.

National Union and Thornton take the position that this language forecloses consideration of the liability provisions of the Drilling Contract and the Lease Agreement, reasoning that those documents amount to "any other type of written memoranda, pertaining to the subject matter" of the Master Agreement and that they do not constitute written agreements expressly conflicting with the Master Agreement. They conclude that Stephens is, therefore, solely liable for the Stricklin Suit.

Stephens, of course, takes the opposite position. An examination of the Drilling Contract and the Lease Agreement is, therefore, in order.

(a) The Drilling Contract covers a specific drilling job performed by Thornton for Stephens and thus seems clearly to be a "type of written memoranda, pertaining to the subject matter" contemplated by the language of the Master Agreement. It will be

-9-

recalled that the Master Agreement is designed to cover jobs and work performed in general by Thornton for Stephens. Thus, the Court must first determine whether the provisions of the Drilling Contract present any conflict with the provisions of the Master Agreement. If so, the question becomes whether the Drilling Contract amounts to something "expressly agreed otherwise" so as to alter the Master Agreement.

Like the Master Agreement, the Drilling Contract contains a detailed section on allocation of risk and responsibility. Paragraph 14.8 provides as follows:

> [Thornton] shall release [Stephens] of any liability for, and shall protect, defend and indemnify [Stephens] . . . from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of [Thornton's] employees . . . on account of bodily injury, death or damage to property.

The provision that Thornton will shoulder the liability for death claims "without regard to the cause or causes thereof" obviously conflicts with the provision in the Master Agreement which places liability for death from explosion or well blowout on Stephens. Thornton and National contend, however, that such conflict is not sufficiently "express" because it does not specifically refer to the Master Agreement. They cite no authority for this proposition, and the Court is persuaded otherwise.

Reading the provision in the way proposed by Thornton and National would render the language of ¶14.8 of the Drilling Contract a nullity -- while, on the other hand, reading that language to expressly alter ¶15 of the Master Agreement would give effect to the language of both contracts.  Under both Oklahoma and Arkansas law, a contract must be construed to give effect to all of its provisions. "[A] construction which neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions." **North v. Philliber**, 269 Ark. 403, 406, 602 S.W.2d 643, 645 (1980).  See also **Great Northern Life Insurance Co. v. Cole**, 207 Okla. 171, 248 P.2d 608 (1952).

For the foregoing reasons, the Court finds that ¶14.8 of the Drilling Contract expressly conflicts with ¶4(d) of the Master Agreement and, thus, pursuant to ¶15 of the Master Agreement, controls liability for the Stricklin Suit -- placing that liability on Thornton.

(b)  The Lease Agreement sets out the terms pursuant to which Thornton leased and used a drilling rig owned by Stephens.  The obvious purpose of such a drilling rig is the drilling of wells such as Dunbar #5.  Under the terms of the Lease Agreement, this rig could be used to drill for customers other than Stephens, and there is no indication that only this rig and no other could be used to do work for Stephens.  However, it is undisputed that the

leased rig was being used to do work for Stephens at the time of the incident which took Stricklin's life, and that it was being used on a well which either exploded or blew out. It will be recalled that ¶4(d) of the Master Agreement relates, *inter alia*, to liability for "personal injury, death or property damage or any damages whatsoever growing out of or in any way connected with or resulting from . . . explosion . . . and/or a well blowout. . . ." Thus, while it is perhaps not as obvious as in the case of the Drilling Contract, the Court also believes that the Lease Agreement can be said to be a written memorandum "pertaining" to the subject matter of the Master Agreement as contemplated in ¶15 of the Master Agreement.

The language of ¶13 of the Lease Agreement (¶13) provides, in relevant part, that:

> [THORNTON] ASSUMES ANY AND ALL LIABILITY AND AGREES TO PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS AND RELEASE [STEPHENS] . . . FROM AND AGAINST ANY MANNER OF LOSS, LIABILITY, CLAIM, DAMAGE, PENALTY OR COST (INCLUDING BUT NOT LIMITED TO, REASONABLE ATTORNEY'S FEES) ARISING IN CONNECTION WITH THIS AGREEMENT THAT IS ASSERTED BY OR ARISES ON ACCOUNT OF . . . DEATH . . . ALLEGED TO HAVE BEEN SUSTAINED IN CONNECTION WITH OR INCIDENTAL TO THE PERFORMANCE OR UTILIZATION OF THIS LEASE AGREEMENT, REGARDLESS OF WHETHER OR NOT SUCH CLAIMS OR ACTIONS ARE FOUNDED IN WHOLE OR IN PART UPON THE ALLEGED NEGLIGENCE, WHETHER SOLE, COMPARATIVE OR CONCURRENT OF [STEPHENS]. . . .

(Capitalization in original.)

This liability provision would require Thornton to indemnify Stephens for the Stricklin Suit -- even if Stricklin's death was

caused by the sole negligence of Stephens -- and thus, like ¶14.8 of the Drilling Contract, conflicts with ¶4(d) of the Master Agreement.  And for the same reasons that apply to the Drilling Contract, the Court finds this conflict to be express, and such as to control liability for the Stricklin Suit -- placing that liability on Thornton.

    9.    Having determined that Thornton had a duty to indemnify Stephens for Stephens' liability in the Stricklin Suit, the Court turns to Thornton's alternative contention that its obligation to indemnify is insured under the National Union Policy.

It is undisputed that Stephens is not shown as a named insured on the National Union Policy, nor as a named insured on Thornton's Scheduled Underlying Insurance with Great Northern. The National Union Policy, therefore, affords no direct coverage for the Stricklin Suit.  Coverage, if it exists at all, must be found in the clause relating to Insured Contracts.

National Union agreed to pay certain sums that Thornton "becomes legally obligated to pay as damages "because of Bodily Injury[4] or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract." (I.A.)

An Insured Contract is defined as

> that part of any contract or agreement pertaining to
> your business under which any Insured assumes the tort

---

[4] Defined terms are printed in boldface type in the National Union Policy.  However, the copy available to the Court is of such poor quality that it is often not possible to determine whether a word is bolded or not, and the Court has, therefore, put all such quotations in regular type.

>  liability of another party to pay for Bodily Injury or Property Damage to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(VII.N.)

National Union contends that the Master Agreement is not an Insured Contract because its insured, Thornton, does not therein assume the liability of Stephens for a third party. National Union then reasons -- from its vantage point that the Drilling Contract and the Lease Agreement do not alter the distribution of risk in the Master Agreement -- that those documents likewise do not provide for Thornton to assume the liability of Stephens for a third party.

While the Court agrees with National Union's initial premise (that the Master Agreement is not an Insured Contract), it has reached a different conclusion with regard to the Drilling Contract and the Lease Agreement, i.e., that they do alter the distribution of risk in the Master Agreement. It is from that conclusion that the Court's analysis of the Insured Contract issue proceeds.

Arkansas law with regard to contracts for indemnity is summarized in **Chevron U.S.A., Inc. v. Murphy Exploration & Production Co., 356 Ark. 324, 330, --- S.W.3d ---, --- (2004):**

>  While no particular words are required, the liability of an indemnitor for the negligence of an indemnitee is an extraordinary obligation to assume, and we will not impose it unless the purpose to do so is spelled out in unmistakable terms. It is also well settled that in contracts of indemnity the losses to be indemnified must

-14-

> be clearly stated and the intent of the indemnitor's obligation to indemnify against them must be expressed in clear and unequivocal terms and to such an extent that no other meaning can be ascribed. The intent to extend the obligation to losses from specific causes need not be in any particular language, but unless this intention is expressed in the plainest words it will not be deemed that the party undertook to indemnify against it. Indemnity agreements are construed strictly against the party seeking indemnity.

Oklahoma law with regard to contracts of indemnity, which governs analysis of the Drilling Contract, is virtually identical to Arkansas law on the issue.

> An indemnity agreement is a valid agreement in Oklahoma, and is governed by statute. This Court will strictly construe an agreement which would have the result of indemnifying one against his own negligence, but where the intention to do so is unequivocally clear from an examination of the contract, such an agreement is enforceable.

**Fretwell v. Protection Alarm Co., 764 P.2d 149, 152-53 (Okla. 1988)** (citations omitted).

When these principles -- and the National Union Policy definition of an Insured Contract -- are applied to the Drilling Contract, the Court finds that the Drilling Contract is an "Insured Contract" under the terms of the Policy and that the Stricklin Suit falls within its ambit:

* The Drilling Conract is a contract pertaining to Thornton's business.
* In ¶14.8 thereof, Thornton assumes the tort liability of Stephens for the death of a third person (Stricklin).
* The beneficiaries of Stricklin asserted theories of tort

liability against Stephens.

The terms of the indemnity are clear. Covered are all claims "without limit and without regard to the cause or causes thereof" arising in a favor of Thornton's employees for death. This language is unmistakable, and the Court can think of no meaning that could be ascribed to it other than that Thornton intended to indemnify Stephens if someone died in connection with the execution of the Drilling Contract.

For the foregoing reasons, the Court finds no material issue in dispute as to whether the Drilling Contract is an Insured Contract as that term is defined in the National Union Policy. This fact triggers National Union's coverage under ¶ I.A.

Moreover, when the foregoing principles and the National Union Policy definition of an Insured Contract are applied to the Lease Agreement, the Court finds that the Lease Agreement amounts to an Insured Contract under the National Union Policy for essentially the same reasons noted with respect to the Drilling Contract.

10. Given the Court's disposition of the preceding issues, it is not necessary to address National Union's contention that Stephens lacks standing to resist National Union's Motion For Summary Judgment, inasmuch as the decision on that motion is based on the contentions of Thornton rather than Stephens.

**IT IS THEREFORE ORDERED** that the **Motion For Summary Judgment Of Defendant, National Union Fire Insurance Company Of Pittsburgh,**

**Pa.** (document #44) is **denied.**

**IT IS FURTHER ORDERED** that **Plaintiff's Cross-Motion For Summary Judgment** (document #45) is **denied in part and granted in part**, and the Court hereby declares as follows:

* that Thornton Drilling Company is obligated, under the terms of both (a) the Lease Agreement with Option To Sell executed on May 27, 2004, by Stephens Production Company and Thornton Drilling Company, and (b) the Drilling Bid Proposal And Daywork Drilling Contract, executed on February 20, 2005, by Stephens Production Company and Thornton Drilling Company, to defend and indemnify Stephens Production Company for losses sustained by Stephens Production Company as a result of litigation arising out of the death of Thornton Drilling Company's employee Eric Stricklin, on January 22, 2005, in an explosion or well blowout.

* that the Lease Agreement with Option To Sell, executed on May 27, 2004, by Stephens Production Company and Thornton Drilling Company, is an Insured Contract as that term is defined in Commercial Umbrella Liability Policy BE2963803 issued by National Union Fire Insurance Company of Pittsburg, Pa., to Thornton Drilling Company for the policy period December 15, 2004, to June 15, 2005.

* that the Drilling Bid Proposal And Daywork Drilling

Contract, executed on February 20, 2005, by Stephens Production Company and Thornton Drilling Company, is an Insured Contract as that term is defined in Commercial Umbrella Liability Policy BE2963803 issued by National Union Fire Insurance Company of Pittsburg, Pa., to Thornton Drilling Company for the policy period December 15, 2004, to June 15, 2005.

The terms of this declaration will be entered in a separate Judgment entered contemporaneously herewith.

**IT IS SO ORDERED,** this 19th day of July, 2007.

                                       **/s/ Jimm Larry Hendren**
                                       **JIMM LARRY HENDREN**
                                       **UNITED STATES DISTRICT JUDGE**